1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOSE TRINIDAD LARA URBINA,**<br><br>               **Plaintiff,**<br><br>    **v.**<br><br>**COUNTY OF KERN, KERN COUNTY SHERIFF'S DEPARTMENT, KERN SHERIFF MACK WIMBISH, KERN COUNTY DEPUTY SHERIFF J.L. ACEBEDO (#200047), CITY OF SHAFTER, SHAFTER POLICE DEPARTMENT, SHAFTER POLICE CHIEF JOHN ZROFSKY, SHAFTER POLICE OFFICERS CHRIS JACKSON, BRIAN ENGLISH, and DOES 1 through 10, inclusive, sued in both their individual and official capacities,**<br><br>               **Defendants.** | **1:05-CV-01056 OWW LJO**<br><br>**MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**1.   INTRODUCTION**

Plaintiff Jose Trinidad Lara Urbina ("Urbina" or "Plaintiff") filed a complaint against Defendants for their alleged use of excessive force during the course of arresting him. (Doc. 1, Complaint ¶ 10, Filed August 18, 2005.)  Before the court is Defendants' Kern County, Kern County Sheriff's Department, and Kern Sheriff Mack Wimbish ("Kern Defendants") motion for summary judgment on Urbina's claims.  (Doc. 35, Motion for Summary Judgment, Filed September 29, 2006.)  Urbina does not

1

1  oppose the motion.  (Doc. 38, Statement of Non Opposition, Filed

2  October 24, 2006.)

3  ## 2.  PROCEDURAL BACKGROUND

4  Urbina filed his complaint on August 18, 2005.  (Doc. 1,

5  Complaint.)  Kern Defendants filed their answer on September 27,

6  2005.  (Doc. 2, Answer.)  On September 29, 2006 Kern Defendants

7  filed a Motion for Summary Judgment.  (Doc. 35, Motion for

8  Summary Judgment.)  On October 24, 2006 Urbina filed a statement

9  of non opposition.  (Doc. 38, Statement of Non Opposition.)

10  ## 3. FACTUAL BACKGROUND[1]

11  ### A.   Background Facts

12  On August 15, 2003, Kern County Sheriff's Deputy George

13  Vargas[2] (Vargas) witnessed plaintiff cross a road and enter onto

14  an orchard road. (Depo of SD Vargas, pg.19, ln. 11 to pg. 20, ln.

15  25, Exhibit C.)  The manager of the orchard had previously

16  requested that Vargas prevent unauthorized entry by those persons

17  who did not have legitimate business in the orchard. (Depo of SD

18  Vargas, pg. 9, llns. 7-14, Exhibit C.)  Vargas additionally

19  realized that plaintiff was a person with whom he had attempted

20  to speak approximately one week prior to this incident, however,

21  plaintiff had eluded him on the prior occasion. (Depo of SD

22  Vargas, pg. 8, ln. 21 to pg. 9, ln. 6, Exhibit C.) (Depo of SD

23  Vargas, pg. 21, llns. 1-3 Exhibit C.)

24  On August 15, 2003, Vargas addressed plaintiff but plaintiff

25

26  ───────────────

[1] All facts are undisputed by Plaintiff.

27

28  [2] Vargas is not, and has not, been named as a defendant in
this litigation.

**2**

1  fled, initially on his bicycle but later abandoned the bicycle to
2  run, on foot, through the orchards. (Depo of SD Vargas, pg. 21,
3  ln. 7 to pg. 22, ln. 24, Exhibit C.)  Vargas requested
4  assistance.  Sheriff's Department Deputies ("Deputies") and
5  Police Officers ("Officers") from the City of Shafter ("Shafter")
6  responded and set up a perimeter to contain plaintiff (Depo of SD
7  Acebedo, pg.17, llns. 4-18, Exhibit B).  Kern County Deputy J.L.
8  Acebedo ("Acebedo") set up a perimeter position on Burbank Street
9  on the south side of the orchard into which plaintiff had fled
10 (Depo of Acebedo, pg.18, llns. 4-10, Exhibit B).

11       Acebedo received a radio transmission from Vargas stating
12 that Officer Jackson was in pursuit of plaintiff in the orchard
13 (Depo of SD Acebedo, pg.18, llns. 17-23, Exhibit B).  Acebedo
14 then noticed a police vehicle pass his location at a high rate of
15 speed and he believed that the vehicle was operated by Officer
16 English, whom plaintiff refers to as "the big guy" in his
17 deposition.  (Depo of SD Acebedo, pg.19, llns. 3-17, Exhibit B.)
18 Acebedo then left his perimeter position and followed the police
19 vehicle. (Depo of SD Acebedo, pg.19, ln. 3 to pg.21, ln.3,
20 Exhibit B.)  During a portion of the time while he was driving,
21 Acebedo could see Jackson chasing plaintiff in the orchard. (Depo
22 of SD Acebedo, pg. 21, llns. 15-23, Exhibit B.) (Depo of SD
23 Acebedo, pg. 22, ln. 24 to pg. 23, ln. 15, Exhibit B.)  Acebedo
24 witnessed English pull his car on to a dirt road and then exit
25 his vehicle.  Acebedo stopped his vehicle, exited it, and began
26 to run toward the location where he believed plaintiff was
27 running. (Depo of SD Acebedo, pg. 21, ln. 7 to pg. 23, ln. 18,
28 Exhibit B.)

**3**

1    Acebedo first witnessed plaintiff from about 30 to 40 yards

2   away. (Depo of SD Acebedo, pg. 23, llns. 19-21, Exhibit B.)  When

3   Acebedo first witnessed plaintiff, plaintiff was face down on the

4   ground and in physical contact with Jackson. (Depo of SD Acebedo,

5   pg. 23, ln. 22 to pg. 24, ln. 1, Exhibit B.) (Depo of SD Acebedo,

6   pg. 25, llns. 19-22, Exhibit B.)  Jackson had one handcuff on

7   plaintiff but plaintiff was passively resisting the placement of

8   the second cuff. (Depo of SD Acebedo, pg. 26, llns. 2-15, Exhibit

9   B.)  Jackson was able to place plaintiff in handcuffs. (Depo of

10   SD Acebedo, pg. 29, ln. 25 to pg. 30, ln. 1, Exhibit B.)  Acebedo

11   and another officer picked plaintiff off the ground and walked

12   him to a patrol car. (Depo of SD Acebedo, pg. 34, ln. 9 to pg.

13   35, ln. 2, Exhibit B.)  Vargas searched plaintiff and then

14   transported him from the scene. (Depo of SD Acebedo, pg. 37, ln.

15   23 to pg. 38, ln. 12, Exhibit B.)

16        **B.   Undisputed Facts**

17        Urbina was arrested on August 15, 2003 and contends that he

18   was struck during his arrest.  (DSUF, No. 9 and No. 12)  He now

19   brings a 42 U.S.C. § 1983 claim alleging that during his arrest

20   Acebedo used excessive force based on a policy and practice by

21   the Kern Sheriff's department of "hurt a man... charge a man."

22   (Doc. 1, Complaint, ¶ 11.)  According to Urbina, under this

23   policy, if an officer believes he has wrongly hurt a person, the

24   officer will seek to secure the filing of a criminal charge

25   against the arrestee.  (*Id.*)  Urbina claims that the officers who

26   arrested him sought filing of criminal charges in the belief that

27   a conviction will prevent him from suing for his injuries

28   wrongfully inflicted by the officer.  (*Id.*)  Lastly, Urbina

**4**

1   argues that such a policy condones the use of excessive force.

2       Acebedo has been dismissed from this action without

3   prejudice.  (DSUF, No. 1; Doc. 35, Mot. for Summary Judgment.)

4   Acebedo arrived at the scene of the arrest after Plaintiff was

5   detained but while he was struggling to avoid being handcuffed.

6   (DSUF, No. 11)  Acebedo was wearing a tan Kern Sheriff's

7   Department uniform.  (DSUF, No. 16)  Acebedo was the only Kern

8   County or Department employee at the location of plaintiff's

9   arrest.  (DSUF, No. 10)  Acebedo did not use excessive force on

10  plaintiff.  (DSUF, No. 17)  Further, no Kern County Department

11  employee used excessive force on plaintiff.  (DSUF, No. 18)

12  Sheriff Wimbish was not physically present at the scene on August

13  15, 2003.  (DSUF, No. 20)  Sheriff Wimbish did not provide any

14  instruction to deputies at the scene on August 15, 2003.  (DSUF,

15  No. 21)  Sheriff Wimbish was not aware of plaintiff's arrest

16  until after the Complaint was served.  (DSUF, No. 22)  County

17  Defendants do not have any policy, procedure or custom of "hurt a

18  man - charge a man."  (DSUF, No. 7)  County Defendants do not

19  condone or allow any policy, procedure or custom of "hurt a man -

20  charge a man."  (DSUF, No. 8)

21      In his deposition Urbina identifies "the tall officer" as

22  the first one to touch him and who allegedly struck him during

23  his arrest.  (DSUF, No. 13)  The "tall officer" was wearing

24  street clothes  (DSUF, No. 14)  Officer Jackson with the Shafter

25  police, handcuffed plaintiff.  (DSUF, No. 15)  The City of

26  Shafter and its peace officers are not the agents, servants or

27  employees of the County or Department.  (DSUF, No. 19)

28  //

**5**

## 4.   <u>STANDARD OF REVIEW</u>

### A.   General Summary Judgment Standard

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c) ; *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Therefore, to defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material.  *Id.*  A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party.  *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986).  Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Anderson*, 477 U.S. at 248).

The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential

**6**

1          to the party's case, and on which that party
2          will bear the burden of proof at trial.  In such
3          a situation, there can be "no genuine issue as
4          to any material fact," since a complete failure
5          of proof concerning an essential element of the
6          nonmoving party's case necessarily renders all
7          other facts immaterial.

8  *Celotex Corp. v. Catrell*, 477 U.S. 317, 322-23 (1986).  The more
9  implausible the claim or defense asserted by the nonmoving party,
10 the more persuasive its evidence must be to avoid summary
11 judgment.  *See United States ex rel.  Anderson v. N. Telecom,*
12 *Inc.*, 52 F.3d 810, 815 (9th Cir. 1996).  Nevertheless, the
13 evidence must be viewed in a light most favorable to the
14 nonmoving party.  *Anderson*, 477 U.S. at 255.  A court's role on
15 summary judgment is not to weigh evidence or resolve issues;
16 rather, it is to determine whether there is a genuine issue for
17 trial.  *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th
18 Cir. 1996).

19      **B.   Summary Judgment in a Qualified Immunity Case**

20     Qualified immunity entails a two-step analysis.  First, a
21 court must ask whether a constitutional violation occurred at
22 all.  If the answer to this question is yes, the court must then
23 inquire whether the right violated was "clearly established" by
24 asking whether a reasonable officer could believe that the
25 defendant's actions were lawful.  *See Saucier v. Katz*, 533 U.S.
26 194, 201 (2001).

27     The traditional summary judgment approach should be used in
28 analyzing the first step of the *Saucier* analysis:

**7**

> A court required to rule upon the qualified immunity
> issue must consider, then, this threshold question:
> Taken in the light most favorable to the party
> asserting the injury, do the facts alleged show the
> officer's conduct violated a constitutional right?
> Where the facts are disputed, their resolution and
> determinations of credibility are manifestly the
> province of a jury.

*Wall v. County of Orange*, 364 F.3d 1107, 1110-1111 (9th Cir. 2004) (internal citations and quotations omitted)*.*  In the second step, the court must ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted.  Although this inquiry is primarily a legal one, where the reasonableness of the officer's belief that his conduct was lawful "depends on the resolution of disputed issues of fact...summary judgment is not appropriate." *Wilkins v. City of Oakland*, 364 F.3d 949, 1110-11 (9th. Cir. 2003) (citing *Saucier*, 533 U.S. at 216 (Ginsburg J., concurring)).

## 5.  **DISCUSSION**

### A.   **Civil Rights Claims Under 42 U.S.C. section 1983**

"Section 1983 provides for liability against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003)(quoting 42 U.S.C. § 1983).  "The rights guaranteed by section 1983 are 'liberally and beneficently construed.'" *Id*. (quoting *Dennis v. Higgins*, 498 U.S. 439, 443

**8**

(1991).  Pursuant to 42 U.S.C. § 1983, Plaintiff may bring a civil action for deprivation of rights under the following circumstances:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for
> redress, except that in any action brought against a
> judicial officer for an act or omission taken in such
> officer's judicial capacity, injunctive relief shall
> not be granted unless a declaratory decree was
> violated or declaratory relief was unavailable. For
> the purposes of this section, any Act of Congress
> applicable exclusively to the District of Columbia
> shall be considered to be a statute of the District of
> Columbia.

**B.   Official Capacity and Individual Capacity Suits**

"1983 claims against government officials in their official capacities are really suits against the governmental employer

**9**

because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002) (citing *Ky. v. Graham*, 473 U.S. 159, 165-66 (1985)); *see also Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) (finding that "a suit against a state official in his official capacity is no different from a suit against the [official's office or the] State itself")(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  In such suits, the real party in interest is the entity for which the official works. *Hafer v. Melo,* 502 U.S. 21, 25 (1991).  A federal action for monetary damages against an individual state official acting in his official capacity is barred by the Eleventh Amendment in the same way that an action against a State is barred. *Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 839 (9th Cir. 1997).  "As the Supreme Court has stated, 'official-capacity suits...generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 524 n.3 (9th Cir. 1999) (quoting *Graham*, 473 U.S. at 165).  "'As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'" *Ruvalcaba*, 167 F.3d at 524 n.3 (quoting *Graham*, 473 U.S. at 166.)

By contrast, "[p]ersonal-capacity suits seek to impose

**10**

personal liability upon a government official for actions [taken] under color of state law." *Dittman v. California*, 191 F.3d 1020, 1027 (9th Cir. 1999)(*citing Kentucky v. Graham*, 473 U.S. 159, 165 (1985))(internal quotations omitted).  To establish personal liability in a §1983 or §1985 action, it is enough to show that the official, "acting under color of state law, caused the deprivation of a federal right."  *Hafer,* 502 U.S. at 25 (internal quotations omitted).  Public officials sued in their personal capacity may assert personal liability defenses, such as qualified immunity.  *Dittman,* 191 F.3d at 1027.

Plaintiff appears to be suing Sheriff Wimbash only in his official capacity.  Plaintiff names Sheriff Wimbash as a Defendant in this case even though there is nothing in the record to indicate that he was present during Plaintiff's arrest on August 15, 2003.

### C.   Fourth Amendment

Under the Fourth Amendment the right of the people to be secure in their persons, houses, and effects, against unreasonable searches and seizures, shall not be violated.  U.S. Const. amend. IV.; *Menotti v. City of Seattle,* 409 F. 3d 1113, 1152 (9th Cir. 2005).  The Supreme Court has held that "in the ordinary case, seizures of personal property are unreasonable within the meaning of the Fourth Amendment, without more, unless accomplished pursuant to a judicial warrant issued by a neutral

**11**

and detached magistrate after finding probable cause. *Id.*
However, when faced with special law enforcement needs, the
Supreme Court has found that certain general, or individual,
circumstances may render a warrantless search or seizure
reasonable. *Id.*

The initial question under *Saucier* is whether there was any
type or amount of force inflicted by Kern Defendants on Urbina
during his arrest on August 15, 2003.

It is undisputed that Sheriff Wimbish was not present during
Urbina's arrest.  Sheriff Wimbish did not provide any instruction
to deputies at the scene on August 15, 2003.  Sheriff Wimbish was
not aware of plaintiff's arrest until after the Complaint was
served.  Sheriff Wimbash, therefore, could not have inflicted
excessive force on Plaintiff or have ratified it.

Defendants motion for summary judgment as to Sheriff Wimbash
is **GRANTED**.

D.   **The *Monell* Doctrine**

Local governments[3] are "persons" subject to suit for
"constitutional tort[s]" under 42 U.S.C. § 1983.[4]  *Haugen v.*

_____

[3] Although *Monell* dealt with a municipal government's
liability under § 1983, the standard there announced was
more broadly framed in terms of "a local government." *Brass
v. County of L.A.*, 328 F.3d 1192, 1198 (9th Cir. 2003).

[4] "There is certainly no constitutional impediment to
municipal liability.  'The Tenth Amendment's reservation of
nondelegated powers to the States is not implicated by a
federal-court judgment enforcing the express prohibitions of
unlawful state conduct enacted by the Fourteenth

**12**

*Brosseau*, 339 F.3d 857, 874 (9th Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)) (also finding the fact that "local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are "persons" under § 1983 in those cases in which, as here, a local government would be suable in its own name").  "[T]he legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Id.* at 690.  "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers...[or for] deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels."[5]  *Id.* 690-91.

Amendment.'" *Monell*, 436 U.S. 691 (quoting *Milliken v. Bradley*, 433 U.S. 267, 291 (1977)).  There is no "basis for concluding that the Eleventh Amendment is a bar to municipal liability." *Id.* (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890)).

[5] In *Brass v. County of Los Angeles*, the Ninth Circuit followed evolution of municipal liability from *Monroe* to *Monell*:

In *Monroe v. Pape*, 365 U.S. 167 [](1961), the

**13**

A local government's liability is limited.  Although a local government can be held liable for its official policies or customs, it will not be held liable for an employee's actions outside of the scope of these policies or customs.  "[T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.  In particular,...a municipality cannot be held liable solely because it employs a tortfeasor, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691.  The statute's "language plainly imposes liability on a government that, under

Supreme Court held that municipal corporations were not subject to liability under § 1983.  In *Monell*, 436 U.S. at 665, the Court, based upon its "fresh" review of the legislative history of the Civil Rights Act of 1871 (the statutory predecessor to § 1983), "overrule[d] *Monroe v. Pape*...insofar as it holds that local governments are wholly immune from suit under § 1983."  *Id*. at 663 (footnote omitted).  The Court, however, upheld *Monroe* "insofar as it holds that the doctrine of respondeat superior is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees."  *Id*. at 663 n.7. It stated that "the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Id*. at 691.

328 F.3d at 1198.

**14**

color of some official policy, [that] 'causes' an employee to

violate another's constitutional rights." *Id*. at 692.

Therefore, "a local government may not be sued under § 1983 for

an injury inflicted solely by its employees or agents.  Instead,

it is when execution of a government's policy or custom, whether

made by its law-makers or by those whose edicts or acts may

fairly be said to represent official policy, inflicts the injury

that the government as an entity is responsible under § 1983."

*Id*. at 694.

    Plaintiff does not dispute that Acebedo was the only Kern

County or Department employee at the location of plaintiff's

arrest.  Acebedo arrived at the scene of the arrest after

Plaintiff was detained but while he was struggling to avoid being

handcuffed.  Acebedo was wearing a tan Kern Sheriff's Department

uniform.  Plaintiff also concedes that Acebedo did not use

excessive force on plaintiff.  Further, Acebedo has been

dismissed from this action without prejudice.

    Plaintiff also does not dispute that no Kern County

Department employee used excessive force on plaintiff.  Sheriff

Wimbish was not physically present at the scene nor did he

provide instruction to any deputies at the scene of the arrest.

Plaintiff fails to dispute that Kern County Defendants do not

have any policy, procedure or custom of "hurt a man - charge a

man."  Plaintiff concedes that County Defendants would not

**15**

condone or allow any policy, procedure or custom of "hurt a man -
charge a man."  Lastly, the City of Shafter employees identified
by Plaintiff as those who conducted the arrest are not employed
by nor are they agents, servants or employees of the Kern County
or Department.

Defendants motion for summary judgment on the civil rights
claim as to Kern County and Kern County Sheriff's Department is
**GRANTED.**

    **E.   State Law Claims**

        **i.    Supplemental Jurisdiction**

Title 28 U.S.C. section 1367(a) provides in pertinent part:
"In any civil action of which the district courts have
original jurisdiction, the district court shall have
supplemental jurisdiction over all other claims that
are so related to the claims in the action within such
original jurisdiction that they form part of the same
case or controversy under Article III of the United
States Constitution."

Plaintiff alleges a § 1983 claim for Fourth Amendment
violations.  Plaintiff's state law claims invoke supplemental
jurisdiction and arise from the same controversy as his §1983
claim.

        **ii.  California Tort Claims Act**

In California, a person making a claim against a public

**16**

entity or a public employee must present such a claim in writing
to the clerk, auditor or secretary of the local public entity
within six months after the accrual of the cause of action.  Cal.
Gov. Code § 911.2.; see also *Javor v. Taggart*, 98 Cal. App. 4th
795, 804 (Cal. Ct. App. 2002) (submission of a claim to a public
entity pursuant to the California Tort Claims Act is a condition
precedent to a civil action against the state or its employees
and failure to present the claim bars the action.)  A person may
not maintain a cause of action against a public entity or public
employee without having first presented a claim as required by
California Statute.  Cal. Gov. Code 945.4.  Cal. Gov. Code
section 954.6 requires that a claimant file a civil action within
six months after the public agency issues its decision.  *Javor*,
98 Cal. App. 4th at 804.

### iii. California Constitution, Article 1 § 7

Article I, § 7 of the California Constitution provides: "A
person may not be deprived of life, liberty, or property without
due process of law or denied equal protection of the laws."

Plaintiff's claims involve allegations of excessive force.
However, it is undisputed that Kern Defendants did not use
excessive force on Plaintiff during his arrest.  It is also
undisputed that there is no policy of "hurt a man... charge a
man" implemented by Kern County or Kern County Sheriff's
Department.  It is undisputed that Kern Defendants did not

**17**

deprive Plaintiff of his constitutional rights under Article 1 §

7 of the California Constitution.

Summary judgment is **GRANTED.**

### iv.   California Constitution, Article 1 § 13

Article I, § 13 of the California Constitution provides:

"The right of the people to be secure in their persons, houses,

papers, and effects against unreasonable seizures and searches

may not be violated; and a warrant may not issue except on

probable cause, supported by oath or affirmation, particularly

describing the place to be searched and the persons and things to

be seized."

Plaintiff does not make an unreasonable search and seizure

claim against the Kern County Defendants in his complaint.

Further, it is undisputed that Kern County Defendants did not

deprive Plaintiff of his constitutional rights under Article 1 §

7 of the California Constitution.

Summary judgment on the state constitution claims is **GRANTED**

as to the moving defendants.

### v.   California Government Code § 815.2

California Government Code § 815.2 provides:

(a)  A public entity is liable for injury proximately

caused by an act or omission of an employee of the

public entity within the scope of his employment

if the act or omissions would, apart from this

**18**

section have given rise to a cause of action

against that employee or his personal

representative.

(b)  Except as otherwise provided by statute, a public

entity is not liable for an injury resulting from

an act or omission of an employee of the public

entity where the employee is immune from

liability.

The undisputed facts show that there was no injury caused to
Plaintiff by Kern County, Kern County Sheriff's Department, or
Sheriff Wimbish.  Acebedo, the only Kern County employee present
during Plaintiff's arrest, had no physical contact with Plaintiff
and has been dismissed from this case without prejudice.  There
are no facts to indicate any liability under California
Government Code § 815.2.

Summary Judgment is **GRANTED** as to the claims under Cal.Gov.
Code § 815.2.

### 6.  CONCLUSION

Defendants' motion for summary judgment as to Sheriff
Wimbash is **GRANTED.**

Defendants' motion for summary judgment as to Kern County
and Kern County Sheriff's Department is **GRANTED.**

Said Defendants' motion for summary judgment of Plaintiff's
claim under The Constitution of the State of California, Article

**19**

1 § 7 is **GRANTED**.

Said Defendants' motion for summary judgment of Plaintiff's claim under The Constitution of the State of California, Article 1 § 13 is **GRANTED**.

Said Defendants' motion for summary judgment of Plaintiff's California Government Code § 815.2 claim is **GRANTED**.


IT IS SO ORDERED.

**Dated:   November 3, 2006**          **/s/ Oliver W. Wanger**
dd0l0                                  UNITED STATES DISTRICT JUDGE